## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA** | : | | |
| | : | | |
| v. | : | | |
| | : | **CRIMINAL NO.** | **07-319 (RWR)** |
| | : | | |
| **LATOYA BRIDGEFORTH,** | : | **VIOLATIONS:** | **18 U.S.C. § 844(e)** |
| | : | | |
| Defendant. | : | **NEXT DATE:** | **March 7, 2008** |
| | : | | |

### UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits its Memorandum in Aid of Sentencing, recommending that the defendant be sentenced, at the low-end of the applicable Sentencing Guidelines range, to 24 months imprisonment.  In support thereof, the United States respectfully states the following:

### Background

1.      A summary of the defendant's actions pertaining to this plea agreement, consistent with the proffer of evidence accepted by the defendant on November 30, 2007, is set forth below.

2.      On September 10, 2007, the defendant was employed as a receptionist at L3 Communications, one of a number of tenants within an office building located at 80 M Street, S.E., Washington, D.C.  On that date, the defendant called Piedmont Realty Trust, the building manager of 80 M Street, at approximately 10:45 a.m. and 10:51 a.m.  On her first call, the defendant, attempting to disguise her voice, stated that there was a bomb in the building and hung up.  On the second call, the defendant, again attempting to disguise her voice, stated that

"my wife left me, I'm going to bomb the building." The Metropolitan Police Department was summoned, and the building was evacuated. A search revealed no explosives in the building.

3.      On September 11, 2007, the defendant again called Piedmont Realty Trust approximately 5 times, at least twice threatening to bomb 80 M Street, S.E. Law enforcement once again responded. The building was evacuated, but no explosives were located in the building.

4.      On September 12, 2007, the defendant made several calls to two other tenants located within 80 M Street, S.E. – BAE Systems and CACI. In the calls to CACI, the defendant again threatened to blow up the building. In the calls to BAE Systems, the defendant asked the individual who answered the phone if she was ready to die.

5.      On October 1st, 2nd, 5th, and 18th, 2007, the defendant made similar calls to either Piedmont Realty Trust, BAE Systems, or CACI, threatening to bomb the building or kill those inside, claiming to be inside the building with a bomb strapped to her body, or claiming to have put gas in the ventilation system of the building. The defendant made a total of approximately thirty threatening phone calls on these dates. The building was evacuated again on October 1.

6.      The defendant made these calls both from her cell phone and from the phone at her desk at L3 Communications.

### Statutory Penalties

7.      Pursuant to Title 18, United States Code, Section 844(e), the defendant faces a maximum sentence of 10 years imprisonment, and/or a maximum fine of $250,000. See PSR ¶¶ 62, 75.

### Sentencing Guidelines

8.      The Federal Sentencing Guidelines calculation embodied in the Presentence Report (PSR) places the defendant's base offense level at 12. <u>See</u> PSR ¶ 19. The PSR includes a 2-point Specific Offense Characteristic increase because the offense involved more than two threats. <u>See</u> PSR ¶ 20. The PSR also includes a 4-point Specific Offense Characteristic increase because the response to the defendant's threats resulted in a substantial disruption of business functions, including the evacuation of the office building on multiple occasions. <u>See</u> PSR ¶ 21. The PSR also correctly affords the defendant a 3-point reduction in her guidelines calculation for acceptance of responsibility, which diminishes her total offense level to 15. <u>See</u> PSR  ¶ 27. The PSR calculates the defendant's criminal history score as 4, and the criminal history category as III. <u>See</u> PSR ¶ 34. Accordingly, based on a total offense level of 15 and a criminal history category of III, the Guidelines range for the defendant is 24 to 30 months of imprisonment. <u>See</u> PSR ¶ 63.

## Sentencing Recommendation

9.      The government recommends that the Court sentence the defendant at the low end of the Guidelines range to 24 months of incarceration.

10.      When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in Title 18 United States Code, Section 3553(a). <u>See</u> <u>United States v. Gall</u>, _____ U.S. _____, 2007 WL 4292116, at *7 (December 10, 2007). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. §3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing

Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

11.    In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 125 S. Ct. at 756. Nonetheless, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See United States v. Gall, _____ U.S. _____, 2007 WL 4292116, at *7 (December 10, 2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark"). The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. See United States v. Rita, ___ U.S. ___, 127 S.Ct. 2456 (2007). See also United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). In addition, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766-67 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

12.    The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a).  Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by Section 3553(a)(1).  The Guidelines themselves thus seek to implement – in a fair and uniform way – the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in Gall.  See Gall, at * 7.

13.    In this case, a sentence within but at the low end of the Guidelines range, to 24 months of incarceration, is appropriate.  The defendant made multiple, serious threatening calls to the tenants of the office building located at 80 M Street, S.E., and these threats had a significant impact on those tenants – including the evacuation of the building on multiple occasions.

14.    As discussed above in paragraphs 1-6, these threats – dozens in all – occurred on seven separate days, over more than a 5 week period, between September 10 through October 18, and the nature of these threats was frightening.  The defendant, for example, threatened to bomb the building and kill the people inside, claiming to be inside the building with a bomb strapped to her body or claiming to have put gas in the ventilation system of the building.

15.    The building's tenants took these frightening claims very seriously.  Notably, these threats occurred around September 11th – a time of heightened security awareness.  As a result, the building was evacuated on multiple occasions, causing a substantial disruption of business function.

16.    Because the defendant worked as a receptionist at the building while making the threatening calls during the period from September 10 to October 18, she should have been very

aware of the significant impact of her threatening phone calls. Nonetheless, the defendant continued to make these frightening calls, over an extended period of time.

17.     Moreover, this is not the first time that the defendant was arrested for making threatening phone calls related to her employment. As explained in the PSR, the defendant recently plead guilty, in District of Columbia Superior Court case 2007CMD011894, to threatening a prior supervisor with bodily harm and was sentenced to 30 days imprisonment. See PSR ¶ 31.

18.     Furthermore, the defendant has an additional, prior criminal conviction for Grand Larceny in Circuit Court of Arlington County, Virginia case CR-02-971, which indicates – similar to this case – a willingness to victimize others.    See PSR ¶ 30.    The defendant's probation was revoked on June 17, 2005, in that case, due to her failure to abide by her conditions of release, and she was sentenced to 30 days imprisonment. Id.

19.     The recommended sentence of 24 months imprisonment in this case reflects consideration of the defendant's emotional and psychological problems described in her mental health evaluation. Although mental health testing, counseling and treatment appear appropriate as conditions of the defendant's sentence, they should not be viewed as a substitute for a term of imprisonment given the significant nature of the defendant's conduct and its serious adverse effects on other people. This is especially true given that, in the section of the mental health evaluation addressing the defendant's judgment, the psychologist specifically states that, although there are emotional, maturational, and perceptual factors which can effect the defendant exercising good judgment in a stable and uniform fashion, she knows the difference between right and wrong.

## Conclusion

WHEREFORE, based upon the above, and the information reflected in the Presentence Report, the United States respectfully recommends a sentence, at the low end of the Guidelines range, to 24 months of incarceration.

Respectfully,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY


By: _____/s/_____
OPHER SHWEIKI
ASSISTANT UNITED STATES ATTORNEY
D.C. Bar Number 458776
United States Attorney's Office
555 Fourth Street, N.W., Room 4233
Washington, D.C. 20530
Phone: (202) 353-8822
Opher.Shweiki@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the United States' Memorandum in Aid of Sentencing was served upon counsel of record for the defendant, Lara Quint, Esq., Assistant Federal Public Defender, Federal Public Defender for the District of Columbia, 625 Indiana Avenue, N.W., Suite 550, Washington, D.C.  20004, through the electronic court filing system, this 29th day of February 2008.

_____/s/_____

OPHER SHWEIKI